HOWARD FULLER, Secretary Department of Employment Relations
You ask three questions concerning classified state employes who run for partisan political office and who are subject to the Hatch Act, 5 U.S.C. §§ 1501-1508. First, you ask:
 1. If a classified state employe is in a position which is wholly federally funded and which is not covered by a collective bargaining agreement, must the employe resign to run for partisan political office because of the Hatch Act, or may the employe simply take a leave of absence without pay as provided in sec. 230.40 (2), Stats.
The answer to your first question is that such an employe is not required to resign in order to run for partisan political office, but may take a leave of absence without pay in order to do so.
The Hatch Act prohibits a state officer or employe, whose principal employment is federally financed, from running for partisan political office. 5 U.S.C. §§ 1501-1503. Violation of the Hatch Act can result in the withholding of federal funds in an amount equal to twice the annual rate of pay which the officer or employe was receiving at the time of the violation. 5 U.S.C. § 1506(a). *Page 132 
The Hatch Act is enforced by the United States Civil Service Commission, 5 U.S.C. §§ 1504-1507, and has been interpreted by the Commission to apply to state employes even when they are on a leave of absence without pay. In Wisconsin, however, the Legislature has enacted section 230.40 (2), Stats., which provides that a classified state employe "shall be given a leave of absence" to run for partisan political office.
In 63 Op. Att'y Gen. 217 (1974), the attorney general interpreted section 16.35 (2) [the predecessor of section 230.40
(2)] and answered the precise question you have asked:
 The issue presented by your request is whether a state agency may proscribe partisan political activity to state employes covered by the Hatch Act even though the legislature approves of such conduct when the procedures of sec. 16.35 (2) and (4) are followed. It is my opinion that an agency may not adopt such a policy.
 In rendering this opinion, I am cognizant of the potential loss of federal funds if covered employes are found in violation . . . . [T]he legislature has formally redefined the balance between an agency's interests and the employe's interests by specifically allowing leaves of absence for such activity . . . . [An] employe today certainly may take leave to run for office and no policy of an agency could be upheld that allowed for his discharge because of it.
63 Op. Att'y Gen. at 219.
Contrary to your suggestion, this opinion is not in conflict with 67 Op. Att'y Gen. 316 (1978). In the latter opinion, after discussing the provisions of the Hatch Act and the provisions of state law, I stated that where both federal and state laws apply, "the more stringent must be observed." 67 Op. Att'y Gen. at 320. In making that statement, in the context of the issue which you raise, I meant simply that state law cannot immunize the state from loss of federal funds which may result from the violation of the federal law. I did not mean to suggest that the prohibition of partisan political activity contained in the Hatch Act could empower a state agency to ignore the provisions of section 230.40
(2). *Page 133 
In the interim, between the two opinions, the Legislature simply renumbered section 16.35 (2) as section 230.40 (2), without amendment. Ch. 196, sec. 61, Laws of 1977. This reinforces my conclusion that despite the potential loss of federal funds, the Legislature has determined that classified state employes who run for partisan political office must be given a leave of absence and cannot be compelled to resign.
As your second question, you ask whether the answer to your first question would be different if the employe's position were only partially, rather than wholly, federally funded. The answer is "no." Although the Hatch Act applies to state officers or employes whose principal employment is financed "in whole or in part" by federal funds, 5 U.S.C. § 1501 (4), section 230.40
(2) authorizes leaves of absence for all classified state employes, regardless of the source of funding for their positions. Cf. 63 Op. Att'y Gen. at 219.
As your third question, you ask whether the answers to your first and second questions would be different if the employe was covered by a collective bargaining agreement negotiated under the State Employment Labor Relations Act, sections 111.80-111.97. The answer to this question depends principally upon the terms of the collective bargaining agreement.
Section 111.93 (2) provides that civil service statutes, like section 230.40 (2), do not apply to employes included in certified bargaining units. Further, section 111.93 (3) provides that a collective bargaining agreement supersedes civil service statutes related to conditions of employment, "whether or not the matters contained in such statutes are set forth in such labor agreement." Consequently, if a collective bargaining agreement contains provisions concerning leaves of absence to run for partisan political office, such provisions are controlling.
On the other hand, if the agreement is silent concerning such leaves of absence, the decision whether to grant a leave rests in the discretion of the state agency involved. In making such decision, however, the agency must consider such factors as the state's duty to bargain concerning conditions of employment and its corollary duty to refrain from instituting unilateral changes, absent any waiver by the union. The agency also should consider that the Legislature expressly has authorized unrepresented employes to take leaves of *Page 134 
absence to run for partisan political office, section 230.40 (2), thereby creating the potential for unfairness (and perhaps even the denial of constitutionally-guaranteed equal protection) if represented employes were to be denied leaves of absence to run for partisan political office. In view of such considerations, I trust that most agencies will grant such leaves to represented, employes.
BCL:DCR
 *Page 1